MADDOX *v.* STATE.

4640                                         233 S. W. 2d 542

Opinion delivered November 6, 1950.

---

850

*Bert B. Larey,* for appellant.

*Ike Murry,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice.  November 19, 1949, Carl Maddox shot and mortally wounded Collins Sheppard, 26 years of age.  The circumstances were such that when tried the defendant was found guilty of murder in the second degree and sentenced to a term of 18 years in the penitentiary.

Witnesses introduced by the State testified that C. L. O'Donnell and Collins Sheppard had been together until nine o'clock in the evening, when they met Wren Sheppard and Julius Wynn at Cool Point.  Collins and Wren Sheppard were brothers.  Using Wynn's car they drove to the café and night club owned and operated by Maddox on Highway 71 near the Louisiana line, reaching the place shortly after two a. m.  In the meantime they had been joined by Kathryn Schoolfield.

Wren Sheppard, Wynn, and O'Donnell testified in substance that while at Cool Point they concluded to drive to Maddox' place for coffee.  There they parked about forty feet from the club.  Other automobiles were to be seen, and the premises were lighted inside and out.  Ten or twelve people, presumed to be customers, were in the building.  When Collins Sheppard, walking in front of his companions, reached a small front porch at the main entrance it was found that the door was locked.  In response to Collins' knock, Maddox came to the door and said the place was closed, then returned to his friends within.  Collins knocked a second time and according to at least two of the witnesses he had turned to walk away

when Maddox reappeared and opened the door. Under testimony from which the jury could have believed that Collins thought that the club owner, in opening the door, had reconsidered the original rejection, he (Collins) turned and took a step toward Maddox. The latter fired one shot from a pistol, then withdrew to a position near the wall, where he brandished the weapon and warned incomers not to molest him.

At the time the shot was fired Collins was not less than four nor more than eight feet from his adversary.[1] It was not contended that Collins was armed, and those who testified for the State agreed that the would-be patron did not use unusual force in knocking on the door, and that there were no threats. The wounded man was taken to a doctor, but was dead before attention could be given. He was shot "in the stomach about an inch from the navel," said one of the witnesses.

The defense contended, and at least inferentially suggested, that the four men were under the influence of intoxicants. It was claimed that the newcomers were politely told—first by Betty Carroll (an employee) and then by "Patsy" (one of Maddox' daughters)—that the place was closed. Finally, when Sheppard and his friends persisted in entering, and when Collins kicked and threatened to kill all who were within, Maddox went to the door, partially opened by Patsy. Collins had taken advantage of Patsy's courteous attitude and actions to shove his foot through the partly opened door in an effort to force an entrance. After Collins and his companions had kicked for some time, the door "flew open" and Collins was in the act of forcing his way in. Maddox insists that he had put a pistol in his pocket as a precautionary measure, not intending to use it. But, thinking he could "bluff" Collins, Maddox drew the weapon and they scuffled for possession of it. Then, said the defendant, "because I was afraid he would hurt me I jerked the gun down to get loose from him, and it [was accidentally] discharged."

At another point in his testimony Maddox said: "When [Collins] kicked the door open and put one foot

[1] State witnesses differed in their estimates of the distance separating the two men.

in, *then* is when I put the gun on him. He jumped at me and grabbed it, and I stooped over. He was stronger than I am, and I was afraid of him; so I jerked the gun down like this (indicating) to get loose from him, and that is when it fired.''

Appellant complains that he was entitled to an instruction dealing specifically with self-defense. In trying to clarify the issues Judge Bush said: ''Mr. Maddox, there is one thing I would like for you to clear up for me: Is it your testimony that you didn't intend to fire the shot?'' A. ''No, I didn't.'' Q. ''[You contend] that the gun went off accidentally?'' A. ''Yes, sir, in the scuffle.'' Q. ''You stand or fall on that statement, do you?'' A. ''Yes, sir.''

Certain suggested instructions dealing specifically with self-defense are thought by appellant to have been erroneously·refused, particularly No. 9, No. 10, and No. 11. But if it be conceded that the effect of testimony given by Maddox was that he attempted to use the gun as a ''bluff'' because he feared bodily injury, the Court's Instruction ''A'' correctly told the jury that if it should find from the evidence '' . . . that the deceased, in a violent, riotous and turbulent manner undertook to force his way into the restaurant of the defendant, then the defendant would have a right to use a show of force to prevent such forcible entry by the deceased, and if the deceased did so undertake to force his way into the restaurant and the defendant presented a pistol in order to prevent his act of forcibly entering, and a scuffle ensued over the pistol and the pistol was accidentally fired and [Sheppard] was killed, you will acquit the defendant.'' This instruction was responsive to the defendant's own theory of the tragedy.

Another objection was to the Court's refusal to halt the Prosecuting Attorney on cross-examination of Maddox, and not to require an answer to the inquiry: ''About a month before this happened didn't you kill another man down there in your place of business [by using a baseball bat?'']. Responding to the defendant's request for a mistrial, the Court ruled that the question could be an-

swered only to test the defendant's credibility, and the jury was instructed not to consider the interrogation or reply for any other purpose. Maddox admitted that he had killed a man named Phillips in the manner mentioned and at the time referred to.

Other objections are made, but we are in accord that none of the assignments is prejudicial, hence the judgment must be affirmed.