BILL STOUT v. THE STATE OF ARKANSAS

5-5379                                    438 S.W. 2d 698

Opinion Delivered April 1, 1969

*Sexton* & *Wiggins* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

CARLETON HARRIS, Chief Justice.    This is the second appeal in this case.    Bill Stout was charged with the crime of murder in the first degree for the killing of Winfred Lee Jones on March 27, 1967.    On the first trial, he was found guilty of manslaughter, and given a sentence of two years in the state penitentiary.    This court reversed the judgment specifically because the trial court did not require the Prosecuting Attorney to produce a written statement of Stout and another witness, although in cross-examining defendant, the prosecutor made frequent references to the purported state-

480

ment made by Stout in writing which conflicted with defendant's testimony. This court also, though finding that the defendant was not entitled to an instruction on self-defense, held that he would have been entitled to an instruction covering excusable homicide, and an instruction was suggested in line with that in the case of *Curry* v. *State*, 97 S.E. 529 (Georgia, 1918). On the second trial, Stout was again convicted of manslaughter, but, instead of receiving a two-year sentence, was given a five-year sentence. From the judgment entered in accord with the jury verdict, appellant brings this appeal. Five points are urged for reversal, which we proceed to discuss, though not in the order listed by appellant.

It is asserted that the evidence is insufficient to support the verdict, and appellant's motion for a directed verdict should have been granted. This point is the last raised by appellant, and less than two pages of the brief are devoted to it. It is apparently recognized that this contention is difficult to support, and we quickly find it to be without merit. The facts in this case are fully set out in our opinion on the first appeal, *Stout* v. *State*, 244 Ark. 676, 426 S.W. 2d 800, and there is no need to detail them again. Suffice it to say that appellant shot and killed Jones with a pistol at the former's home, Stout testifying at the first trial that Jones arose from a couch and "went to his left hand pocket again," and that he (Stout), thinking Jones might have a pistol, then fired, though he had no intention of hurting Jones. He said that his only purpose in firing was to shoot over the victim's head and frighten him into leaving the house. At the second trial, Stout did not take the witness stand; the state's case was based on the testimony of officers, who testified relative to conditions found at the house when they arrived,[1] and also to appellant's statements with regard

---

[1] They were notified of the shooting by telephone from Stout.

to the shooting.[2]   In his brief, appellant, in referring to the statements made to officers, says:

"* * * Through these statements there is one consistent dominant theme.   Stout claimed that he did not intend to harm or injure Jones. * * *

"How can Stout's statements that he did not intend to harm Jones be separated from his statement that he pulled the trigger.   It seems to us that the jury was not at liberty to pick and choose. If they believe he did the shooting, could they logically reject for no reason whatever, his statement that he did not intend to hit Jones.

"This is not the case where the jury actually heard Stout and could determine what to believe and not to believe.   All the Jury heard was the officers repetition of what Stout said to the officers."

Appellant overlooks the fact that one of the officers (John Ames) testified that appellant, upon being asked why he shot Jones, replied, "Oh, Ames, it was just jealously, I guess." For that matter, the jury, of course, did not have to accept as the full truth everything told the officers by appellant.   They had the right, in viewing all the circumstances, to find the statement that he did not intend to hurt Jones, to be entirely self-serving.

The majority of the court is of the view that this judgment should be reversed, but the opinion in this case cannot serve as a precedent for future cases, because no four members agree on any one ground of reversal.   The writer, together with Justices Brown and Holt, thinks error was committed as asserted in appellant's Point 3, said point stating that the court erred in

[2]These statements were held valid on the first appeal, and not controlled by Miranda v. Arizona, 384 U.S. 436, as urged by appellant at that time.

482

instructing the jury that Stout could be sentenced to a greater period of imprisonment than two years. The penalty for voluntary manslaughter is imprisonment for a period of not less than two, nor more than seven years. Ark. Stat. Ann. § 41-2229 (Repl. 1964). As stated, Stout only received a two-year sentence at the first trial, but was given a five-year sentence on the second occasion. It is the position of the state that, since this sentence is within the term prescribed for the offence of voluntary manslaughter, the judgment is entirely legal and valid. All agree that a defendant cannot be re-tried for a higher degree of homicide than that in the first trial. See *Johnson* v. *State,* 29 Ark. 32. The state courts of the several jurisdictions are not in agreement as to the proper rule. Even the federal courts have disagreed. For instance, in *Patton* v. *State of North Carolina,* 381 F. 2d 636 (1967), the facts reveal that Patton, in October, 1960, was convicted of armed robbery after a plea of *nolo contendere,* and sentenced to twenty years' imprisonment. No appeal was taken, but in 1964, Patton applied for a state post-conviction hearing, and on the basis of the decision in *Gideon* v. *Wainwright,* 372 U.S. 335,[3] was awarded a new trial. He pleaded not guilty, but was convicted by the jury on the original indictment. It was brought to the attention of the court that Patton had already served nearly five years for the offense. The judge imposed a sentence of twenty-five years, and then deducted five years for the amount of time served. The United States Court of Appeals for the Fourth Circuit affirmed the holding of the Federal District Court (Western District) of North Carolina that the sentence was so fundamentally unfair as to constitute violation of the due process and equal protection clauses of the Fourteenth Amendment. In doing so, the court said:

"* * * Although the trial judge paid lip service to the idea of crediting Patton with that portion of the initial twenty-year sentence already served, he

---

[3]Patton entered the plea without benefit of counsel.

actually increased Patton's punishment by imposing, in effect, a twenty-five-year sentence and then deducting five years for the time served. Thus, as a result of seeking and obtaining a new trial, the prisoner, who originally would have been eligible for parole in October 1965, now, it is agreed, will not become eligible until February 1970.

"Regardless of whether the action of the sentencing judge is verbalized as a twenty-year sentence without credit for the five years already served, or as a twenty-five-year sentence with credit, the sentence is to compel the defendant to serve five years longer to become eligible for parole, than he would have been required to serve had he not asserted his constitutional right to a fair trial.

\* \* \*

"\* \* \* In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old. Seldom will this policy result in inadequate punishment. Against the rare possibility of inadequacy, greater weight must be given to the danger inherent in a system permitting stiffer sentences on retrial—that the added punishment was in reaction to the defendant's temerity in attacking the original conviction. Even the *appearance* of improper motivation is a disservice to the administration of justice."

The court also held that the constitutional protection against double jeopardy is violated if an increased sentence, or a denial of credit, is permitted on re-trial, stating:

"Double jeopardy, rather than being a single doctrine, is actually comprised of three separate though related rules, prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following convic-

tion, and (3) multiple punishment for the same offense.''

Pointing out that the Supreme Court has said in *Green* v. *United States*, 355 U.S. 184,[4] that an accused may not be reprosecuted for the offense of which he was acquitted at the first trial, the Circuit Court then held that a penalty at the second trial, more harsh than the one received at the first trial, had the effect of placing him twice in jeopardy of punishment for the same offense. This holding was based partly on the ''implied acquittal'' doctrine, and in part on a different aspect of double jeopardy—the prohibition against multiple punishment. *Ex Parte Lange*, 85 U. S. (18 Wall.) 163. See also *Kennedy* v. *U. S.*, 330 F 2d 26 (1964).

To the contrary, the United States Court of Appeals for the Third Circuit held in *United States* v. *Russell*, 378 F. 2d 808 (1967), that constitutional standards of due process were not violated though Russell received a more severe sentence when he was sentenced the second time.[5] The court said:

''* * * Accordingly, it can be said the later sentence imposed by Judge Shugart was well within the limits fixed by the law, as the petitioner could have been sentenced for a period up to ten years on each count. Here, the decision to impose the sentence given within the discretion of the trial judge who had an opportunity to see and hear the accused and his witnesses.''

Still, a third view was taken by the United States Court of Appeals for the First Circuit, wherein it was held that the sentencing court should be permitted to

---

[4]Green had first been convicted of second degree murder. and the court held that he could not be retried for first degree murder for the reason that the jury in the first trial impliedly acquitted him of the charge of first degree murder.

[5]Russell had pleaded guilty originally, but, under **Gideon v. Wainwright,** *supra,* was awarded a new trial.

impose a greater sentence upon retrial if circumstances disclosed in a pre-sentencing report warranted such a step." *Marano* v. *U. S.*, 374 F. 2d 583 (1967). It is interesting to note, however, that the court of appeals held that the trial court is not justified in increasing a sentence, following a successful appeal, on the basis of additional evidence offered at the second trial. The Supreme Court of Wisconsin, in *State* v. *Leonard*, 159 N. W. 2d 577 (1968), held that on retrial, if there is a second conviction, a trial court is barred from imposing an increased sentence, unless events occur subsequent to the first imposition of sentence which warrant an increased penalty; even then, the court is required to affirmatively state its grounds for increasing the sentence.[7] The opinion points out, however, that a numerical majority of the decisions from other jurisdictions support the position that upon reconviction and resentencing for the same crime, the trial court may increase the sentence, and, in fact, may assess any sentence it believes appropriate within the maximum set by statute; it is stated that these courts have primarily premised this holding on the theory that, in appealing from a conviction, a defendant assumes the risk of a more severe sentence, and he must accept the hazards, as well as the benefits, that could result therefrom.

In the case before us, in taking the view that Stout could not receive a greater sentence upon the second conviction than was given him at the first trial, the three justices heretofore mentioned are not particularly persuaded by *Patton* v. *State of North Carolina, supra. State* v. *Leonard, supra,* or the views of any court, state or federal, which has held an increased sentence on a second trial to be a violation of constitutional standards.

---

[6]We have no provision for a "pre-sentencing report" in this state. This report advises the court of events that have occurred subsequent to the first sentence, both good and bad, which the court may take into consideration in fixing the second sentence.

[7]The court majority was not convinced that the trial court relied solely on new information obtained subsequent to the first trial, and held that the increase in penalty was not justified.

Rather, we take this view because we feel that this question has already been passed upon by our own court. In the case of *Sneed* v. *State*, 143 Ark. 178, 219 S.W. 1019, the defendant was convicted of the crime of murder in the first degree, it being charged that he had poisoned his wife, and the jury fixed his punishment at life imprisonment. This conviction was reversed, and Sneed was again tried, and again convicted of first degree murder. *Sneed* v. *State*, 159 Ark. 65, 255 S.W. 895. During the second trial, several references were made to the first trial, and the court instructed the jury that the former trial of the case and the result were not to be considered by the jury in reaching a verdict, except that, if the jury should find the defendant guilty of first degree murder, they could only fix his punishment at imprisonment in the state penitentiary for life. The appellant complained that this instruction was error, and that the jury should have been told that they could not consider the former verdict for any purpose. In holding that no error had been committed, this court said:

"* * * There was no error in the instruction, and it was a proper one to give. References to the former trial had been made throughout this trial, during the selection of the jury, the opening statement of counsel, the taking of testimony, and the arguments of counsel before the cause was finally submitted. The instruction therefore was proper, and, if any prejudice had been lodged in the minds of the jury by these references, this instruction had the effect to remove it. The instruction was tantamount to telling the jury that they could not consider the former trial or verdict as evidence in the cause, and thus fully met appellant's objection in this respect. The effect of the instruction was to tell the jury that, as appellant had once been put upon trial for murder in the first degree and the punishment in that case fixed at life imprisonment, if they should return a verdict of guilty they could not punish him by death. *It was proper for the*

*court to instruct the jury as to the form of its verdict and as to the punishment, in case they should return a verdict of guilty, so that they might not be misled and possibly return a verdict in a form that would result in a mistrial because of former jeopardy."*[8]

The above italicized language, as far as the three justices who adhere to this view are concerned, is conclusive. Article 2, Section 8, of the Arkansas Constitution, cited in *Sneed*, provides, *inter alia,* that "no person, for the same offense, shall be twice put in jeopardy of life or liberty." It is true that in *Sneed* the result of our decision was that a man could not be twice placed in jeopardy of losing his life; of course, it is generally considered that losing one's life is a greater punishment than imprisonment, but we see no legal distinction, nor does our Constitution make any such distinction. The quoted portion of Article 2 says that one shall not be twice placed in jeopardy of "life *or* liberty.'"[9] The fact remains that the holding in the second appeal, *Sneed* v. *State, supra,* was that Sneed could not be given a greater punishment on the second trial than he received at the first trial—even though he was tried the second time for the *same degree* of murder— identically the *same offense*—for which he had originally been tried.

---

[8]Emphasis supplied.

[9]Of course, unless a greater sentence is received on a second trial, double jeopardy is not involved simply because a criminal case is retried after reversal. In **Johnson v. The State,** 29 Ark. 31, Chief Justice English, speaking for the court, said:

"It is very well settled that where a defendant is tried and convicted of a criminal offense, and a new trial is granted him on his own motion, he may be tried again for the same offense.

"It is true that, by a constitutional provision as well as by the common law, no man can be twice put in jeopardy of life or limb for the same offense; but, where the first jeopardy has resulted in his conviction, it is rather a merciful interposition of the court, than any invasion of his rights, to set aside the conviction upon his own application in order to afford him the opportunity of another trial."

As stated, the view expressed herein is that of only three justices, but even though a majority of the court agreed, such an error would not call for a reversal, for it could be remedied by reducing the prison sentence to two years.

Justices FOGLEMAN, BYRD, and HOLT, are of the opinion that appellant's requested instruction No. 2 should have been given. This instruction told the jury that, if it found that Jones was intoxicated and engaged in such actions as constituted an apparent threat to Stout and his family, and that Stout was endeavoring to remove Jones from his home; that Stout reasonably believed that Jones was armed with a knife and might do him bodily harm; and that Stout fired the fatal shot for the purpose of attempting to scare or frighten Jones, then the killing did amount to excusable homicide, and Stout should be acquitted. It is the writer's view, along with that of Justices SMITH, BROWN and JONES, that any possible error in failing to give this instruction was cured by the giving of appellant's requested instruction No. 5, which told the jury that acts committed by misfortune or accident should not be deemed criminal where it appeared there was no evil design, intention or culpable negligence, and that, if the jury believed that the death of Jones was the result of an accident, free from the elements mentioned, Stout should be acquitted. A concurring opinion setting out the views of the aforementioned justices, who feel that the failure to give the instruction constituted reversible error, is handed down on this date.

Certain remarks were made to the jury by the attorney for the state, which appellant contends constituted a comment by that official on the failure of appellant to testify. The writer, and Justices BYRD and HOLT are of the opinion that there is merit in this contention. This finding of error is principally based on the fact that the state's attorney repeatedly made statements which could well impress the jury with the fact

that there was some reason why appellant did not testify. Some of the statements made were as follows:

"* * * I want to call your attention to this one thing. Whatever evidence was offered here was offered by the State of Arkansas. The lips of the Jones boy are sealed. They are sealed in death, and he cannot come here to tell you the story that he knows and the story that happened out at the Bill Stout home on this particular day. We can't bring him back here to testify; but I want to say to you, Ladies and Gentlemen of the Jury, that there was a house full of people there, and *how many of them has the defendant brought to you - - -*"

"* * * Now then in the other trial the defense was self-defense—"

"* * * The defendant in this case does not even claim that he was about to do him bodily harm or that there was anything that he was afraid of—"

In *Perry* v. *State,* 188 Ark. 133, 64 S.W. 2d 328, the prosecuting attorney commented to the jury:

"In fact, the defendant has not denied a single, solitary iota of evidence that has been given against him from the stand here today."

We held that the effect of this language was to call to the jury's attention the failure of the defendant to testify, and reversed the conviction.

Another suggested error relates to the fact that the record reflects that the court told the jury that appellant was being tried on a charge of involuntary manslaughter. This obviously was a typographical error, but there is no reason to discuss the contention, since it is not likely to arise on another trial.

The next asserted error deals with opening remarks of the state's attorney; though no objection was made, we discuss the contention, since the case is being remanded and likely will be tried again.

In his opening statement, the prosecutor mentioned the fact that written statements taken from witnesses would be introduced in evidence, and he added, "those statements will be here, and you all may look at them. There is going to be some deviation from those statements, at least by the defendant." Actually, none of the statements were introduced for any purpose, and, as previously stated, the appellant did not take the stand. Further, the prosecutor said:

"* * * that there was no effort made at all by the deceased to try to harm Mr. Stout, and you will be confronted with the fact that it is pure fabrication for him to come in here and tell you that he was being attacked with a knife in order to make you believe his side of the story."

The purpose of an opening statement is to inform the jury of the evidence that will be offered on behalf of the party represented, and, of course, the state's attorney should not refer to evidence that he has no intention of offering. For that matter, we do not know just how the statements from the witnesses could have been referred to unless a witness testified contrary to his or her original statement, and the prosecutor had claimed surprise and obtained the permission of the court to cross-examine the witness with regard to the inconsistency. In *Shands* v. *State*, 118 Ark. 460, 177 S.W. 18, we said:

"* * * The affidavit and the letter set out in the statement of facts were not competent as affirmative matter tending to show the guilt of the accused, but they became competent for the purpose of contradicting and impeaching the prosecuting witness when she testified that appellant had never

at any time had intercourse with her. But for this denial they would not have been competent. But the denial made them admissible, as the party producing a witness, when surprised by adverse testimony, may show, for the purpose of impeachment by contradiction, that the witness has made prior statements inconsistent with the one made on the stand."

There is no reason for the attorney representing the state to comment upon the evidence that will be offered by the defense—for the very simple reason that he does not know what evidence will be offered. This is made obvious by the fact that the prosecutor made reference to what the defendant (appellant) would say in testifying, when in fact, it developed that the defendant did not testify at all.

In view of a retrial, a similar matter should be mentioned. It is claimed that error was committed during the testimony of Jannie Medlock Chambers, a step-daughter of appellant, who was placed on the witness stand by the state. The alleged error relates to the prosecutor's reference to a purported conflicting written statement made by the witness following the shooting. We have just pointed out that it is permissible to cross-examine one's own witness when one is genuinely surprised by the testimony given, and states that fact immediately to the court; also when a witness is known to be hostile, the court has discretion to allow latitude in the examination of such a witness. *Ward* v. *State,* 85 Ark. 179, 107 S.W. 677. Otherwise, the reference is error.

One other alleged error refers to the fact that a small son of the deceased commenced to cry and left the courtroom in tears while the prosecuting attorney was making his argument. There is nothing in the record to reflect that this was "staged," and the trial court admonished the jury to disregard the incident.

Reversed and remanded.

FOGLEMAN, BYRD & HOLT, JJ., concur.

GEORGE ROSE SMITH and JONES, JJ., would affirm.

JOHN A. FOGLEMAN, Justice.    Judges BYRD, HOLT
and I are of the opinion that the trial court's failure to
give appellant's requested instruction No. 2 constituted
reversible error.    This instruction is strikingly similar
to one approved by this court in *Maddox* v. *State,* 217
Ark. 849, 233 S.W. 2d 542.    That one was held to be
sufficient to justify the refusal of self-defense instruc-
tions because it was responsive to the appellant's theory
of the case.    The instruction there told the jury that
if it should find from the evidence' ' '* * * that the de-
ceased, in a violent, riotous and turbulent manner und-
ertook to force his way into the restaurant of the de-
fendant, then the defendant would have a right to use
a show of force to prevent such forcible entry by the de-
ceased, and if the deceased did so undertake to force
his way into the restaurant and the defendant presented
a pistol in order to prevent his act of forcibly entering,
and a scuffle ensued over the pistol and the pistol was
accidentally fired and [Sheppard] was killed, you will
acquit the defendant.' ''    It is consonant with the in-
struction suggested in *Curry* v. *State,* 148 Ga. 559, 97
S.E. 529 (1918), to which we said, on the former appeal
in this case, appellant would have been entitled.    See
*Stout* v. *State,* 244 Ark. 676, 426 S.W. 2d 800.    Even
though self-defense is not now asserted, the principle in-
volved is the same.

There is no doubt that the instruction requested was
a correct one.    One has the right to eject another from
his home, whether trespasser or invitee, and to use force
to do so when quiet means fail.    *McCoy* v. *State,* 8 Ark.
451; See Annot., 67 L.R.A. 544, 25 A.L.R. 523, 32 A.L.R.
1541, 34 A.L.R. 1488.    The failure to give a correct in-
struction must be presumed to be prejudicial error un-

less it otherwise appears. *Beevers* v. *Miller,* 242 Ark. 541, 414 S.W. 2d 603. The majority hold that the giving of appellant's requested instruction No. 5 was sufficient to cure any error. We do not feel that this position is tenable.

Excusable homicide is homicide by misadventure, i.e., where a person in doing a lawful act, without any intention of killing, unfortunately kills another. Ark. Stat. Ann. § 41-2243. *Stout* v. *State,* supra. Nowhere in any instruction given did the court indicate to the jury that, if they found appellant's theory of the case to be correct, he was doing a lawful act. Appellant was entitled to have the jury so advised. Under similar circumstances, we have held that one who contended that a weapon was accidentally discharged, while he was engaged in lawful acts of self-defense, was entitled to an instruction on justifiable homicide even though an instruction on accident was given. *Jordon* v. *State,* 238 Ark. 398, 382 S.W. 2d 185. The same principle applied here would require a reversal of this case.

Even if the court's instructions could be said technically to cover the matter in a general way, the defendant was entitled to have the court correctly and clearly apply the law to the facts of the case, unless it appears that prejudice has not resulted. *Beevers* v. *Miller,* 242 Ark. 541, 414 S.W. 2d 603. We do not see how we can say there is no prejudice here, because of the deficiency above stated.