BILL STOUT v. STATE OF ARKANSAS

5444                                            448 S. W. 2d 636

Opinion delivered January 12, 1970

*Sexton & Wiggins,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. The appellant, Bill Stout, was charged on information filed by the prosecuting attorney in the Crawford County Circuit Court with the crime of murder in the first degree in the shooting of Winfred Lee Jones on March 27, 1967. This is the third appeal to this court following as many trials. Stout's first trial resulted in a verdict of guilty of manslaughter with a penitentiary sentence of two years. This court reversed, *Stout* v. *State,* 244 Ark. 676, 426 S. W. 2d 800. The second trial also resulted in a verdict of guilty of manslaughter with a sentence of five years. This court again reversed, *Stout* v. *State,* 246 Ark. 479, 438 S. W. 2d 698. At his third trial Stout was again found guilty of manslaughter and his punishment fixed at two years in the penitentiary. On this appeal he relies on the following points for reversal:

"The court erred in permitting the prosecuting attorney to withdraw his peremptory· challenge to two jurors after the jury panel had been exhausted and at a time when defendant had only one peremptory challenge available to him.

The court erred in overruling defendant's motion for change of venue.''

The facts remain practically the same as detailed in the earlier decisions, supra. Stout and Jones had known each other and had been on friendly terms for some time prior to March 27, 1967. On that date Jones went to Stout's home about 11:30 a.m. Jones had been drinking when he arrived at the Stout home and he and Stout consumed additional beer while they worked on a kitchen cabinet during the afternoon. When Stout left for work about 3:30 p.m., he requested Jones to also leave and Jones went to his automobile as if to leave but he returned to the Stout home after Stout left for work. Jones and Mrs. Stout purchased additional beer during the afternoon and Jones continued to drink beer in the Stout home in the presence of Mrs. Stout and her teen-age daughters and a 20 year old male relative. Mrs. Stout also drank some of the beer. The evidence is in some conflict as to Jones' conduct during the afternoon. Mrs. Stout testified that Jones forced her to accompany him on the trip for additional beer, but other evidence is to the effect that one of the daughters also went along.

In any event Stout learned by phone that Jones was still at his home, so about 6:30 p.m. during a work rest period, Stout returned home and demanded that Jones leave. The evidence is in some conflict as to exactly what was said and done, but about 7:30 p.m. Stout shot and killed Jones with a pistol. The sufficiency of the evidence is not questioned on this appeal so for that reason we do not set it out in detail.

The record is not perfectly clear as to the sequence of events in the selection of the jury leading up to appellant's allegation of error under his first point. After four of the jurors had been excused for cause and eight jurors including Mrs. Rastall had been selected, the appellant had exercised seven peremptory challenges including that of juror W. F. Arnold, and the

state had exercised none. At this point the record is as follows:

"MR. ROGERS: We haven't had an opportunity to talk to the Joneses, but Mr. Arnold is related and they wanted to get him off.

THE COURT: You have a right to exercise challenges so long as it is done before he exhausts his challenges.

MR. SEXTON: I have just exhausted mine, Your Honor.

THE COURT: You have not. You have exercised six challenges. You have not exhausted your challenges.

MR. SEXTON: I thought the Defendant had six.

THE COURT: The Defendant has eight. The State has six.

MR. ROGERS: We excuse Mrs. Rastall and Mr. Arnold.

MR. SEXTON: We object and except to the Court forcing us to challenge before he exercises his challenge.

THE COURT: The Supreme Court has held that the Prosecuting Attorney may exercise a challenge on a juror previously accepted provided he exercises his challenge before the defendant has exhausted his challenges. The Court so holds.

MR. SEXTON: Note our exceptions.

(Back in the hearing of the Jury)

MR. SEXTON: Who did he challenge?

THE COURT: Mrs. Rastall and Mr. Arnold."

The parties continued the examination of the jurors on voir dire, and after one was dismissed for cause, three additional jurors were selected. The appellant exercised one additional peremptory challenge and the state exercised three including Everett Young (who had sat as a juror in a criminal case where appellant's attorney had represented the defendant who was acquitted).

At this point the appellant moved for a mistrial or in the alternative for a continuance and stated his reasons as follows:

"The jury Commissioners of Crawford County duly and regularly elected or rather selected a list of alternates as jurors which list was delivered to the Clerk and that the jurors in attendance this morning have been summoned from the list and that the panel has been exhausted. We have been unable to obtain a jury, and that the Court has reviewed the list and that there are a number of persons on the list who are not in attendance upon the Court this morning, and that the Court as we understand it proposes to order the appearance of a number of those who are not in attendance but not all of those who are not in attendance; and that such procedure would deny to the defendant the right to have a jury of his choice from the panel selected by the Jury Commissioners."

The Court overruled the motion with the following explanation:

"Let the record show that at this time the State and the Defendant have selected ten jurors in the case, and that the Court is about to order the Sheriff to summon some of the jurors whose names appear upon the regular and special lists, that have been previously excused by the Court for various reasons, mostly because it would have been a great in-

convenience for the jurors to attend at some previous Court Session during this term.''

Then the following colloquy occurred and the record is as follows:

''MR. SEXTON: And we wish to make it plain that we do not object to the Court's calling additional jurors but our objections goes to the Court's selecting the additional jurors that are to be called. We believe all jurors that have been excused ought to have been called because it is the defendant who has the right to select from the panel and not the Court.

THE COURT: The Court thinks it is unnecessary and impractical to summons all jurors who may not be here at the present time when only a few are needed.

MR. SEXTON: We would respectfully point out to the Court that the Defendant still has one peremptory challenge and we have two jurors to select and the State still has three peremptory challenges remaining, and none of us can know the qualifications of the jurors that are to be called but it would appear that there is a distinct possibility that at least six jurors would be required, and we believe especially in view of the last legislative act of our legislature referring to random selection of jurors that we are prejudiced by our inability to have the jurors that was from the entire panel that was selected by the Jury Commissioners and the selection to be made by the defendant and the prosecution rather than by the Court.

THE COURT: The motion is overruled.

MR. SEXTON: Note our exceptions.

MR. ROGERS: I wish to withdraw the challenges on Jurors Young and Rastall.

THE COURT: Mr. Sexton, since the State has withdrawn its challenges to the two jurors, that appears to make the full panel.

MR. SEXTON: What was Mr. Young's first name?

THE COURT: Everett, Everett Young.

MR. SEXTON: And we object to the Court's action in permitting the State to withdraw its objections to the two jurors, Mrs. Alma Lee Rastall and Mr. Everett Young.

THE COURT: You have previously accepted Mrs. Rastall and you have not yet exhausted all your challenges.

(Now back in the hearing of the Jury)

THE COURT: The Clerk will call the names of the jurors and as your name is called, please stand and remain standing until the call is complete.

THE CLERK: Mrs. Jean Peer, Charles Pratt, Jerry Thomas, Mrs. George Shook, Alma Lee Rastall, Doyle Telaar, Clara Storey, Mrs. Mary Cluck, Geneva Releford, Everett Young, Troy Robertson, Mrs. Charles Lewis (All remain standing.)"

We find no error in this procedure. Ark. Stat Ann. §§ 39-220.1—39-221 (Repl. 1962) are as follows:

"Deficiencies in the regular panel of the petit jury shall be filled by selecting jurors from the special panel provided for in section 3 [39-220] of this act and when in the trial of any case the regular panel is exhausted the court shall direct the summoning

of a sufficient number of jurors from the special panel to complete a jury for the trial of said cause. In no event, except by consent of the parties, shall bystanders be summoned.

Said list so provided shall be enclosed and sealed in an envelope and indorsed 'Special Panel of Petit Jurors' by the jury commissioners, delivered to the clerk in open court and filed by the clerk. When in the opinion of the court it appears that a regular panel cannot be completed from the list of regular and alternate jurors selected by the jury commissioners or that the regular panel will be exhausted during the trial or prior to the trial of any case the court shall order the clerk to open the panel of special jurors in open court and shall direct the sheriff to summon such number of special petit jurors from said list as may be needed either as regular petit jurors or as special jurors in the trial of any case.''

A defendant does not have the right to have a jury of his choice from the panel selected by the jury commissioners, he only has a right to a competent, fair and impartial jury. The privilege of peremptory challenge in selecting a jury is not a right of selection, it is a privilege of rejection. (See 47 Am. Jur. 2d, Jury, § 233). Challenges for cause are unlimited.

Now as to the crux of appellant's contention on his first point. The record indicates that he actually had two peremptory challenges left when ten jurors had been selected. When the appellant objected to the court exercising its statutory authority and duty in obtaining additional jurors from the regular or alternate panel who were not in attendance on the court, the state simply withdrew its peremptory challenge to Mrs. Rastall, whom the appellant had previously accepted, and to Mr. Young, who had stated on voir dire examination that he had previously served on a jury where appel-

lant's attorney had represented a defendant in a criminal case and the defendant was acquitted.

The appellant cites two cases in support of his contentions under his first point. The case of *Furman* v. *Applegate,* 23 N. J. Law 28, was an 1850 New Jersey case holding that the trial court did not err in refusing to permit the defendent to challenge a talesman juror and then after another talesman was called, and also peremptorily challenged, withdraw his challenge and reinstate the first juror. We agree with the New Jersey court that such procedure would be fraught with mischief. Under the sparse facts of that venerable case it would appear that through the process of challenge and withdrawal, the defendant was attempting to do what the appellant contends, in the case at bar, he is entitled to do—obtain a jury of his choice from all of those summoned as prospective jurors. In the case at bar the withdrawal of the state's challenge made up the jury and no additional talesman was called because no additional jurors were challenged for cause and the defendant exercised no further peremptory challenge.

The second case relied on by the appellant, *Biddle* v. *State,* 10 A. 794, was an 1887 Maryland case in which one Ferguson was accepted as a juror by the state but was challenged peremptorily by the accused. Afterwards, and before the panel of 12 jurors had been obtained, but after 11 jurors had been sworn; after the accused had fully exhausted his peremptory challenges, and the state had only exhausted two challenges, a talesman was summoned and his name made known to the accused. No cause was suggested as ground of challenge to the talesman but the accused proposed to withdraw his challenge to Ferguson and to allow him to be sworn in as the 12th juror. The New Jersey trial court sustained the state's objection to this procedure and the Supreme Court sustained the trial court saying: "The right of peremptory challenge is a right not to select, but simply to reject, jurors, without cause assigned."

The distinction between that case and the one at bar is obvious. In the case at bar the state withdrew its challenges to two jurors in order to make up a jury from the panel in attendance. The defendant had already indicated his acceptance of one of these jurors and the other one had originally been rejected by the state apparently because he had sat on a jury which had rendered a verdict favorable to a client appellant's attorney was representing. The state did not withdraw its challenges in an attempt to select one juror in preference to another juror. It withdrew its challenges for the purpose of making up the jury from the panel in attendance on the court and to avoid the delay in summoning other veniremen over the objections of the appellant. The appellant could have eliminated either or both of these jurors by the mere exercise of his right of peremptory challenge. This he did not do.

The appellant never did exhaust his peremptory challenges, neither did he save his exceptions to the court's action in permitting the state to withdraw its peremptory challenges to the two jurors. The appellant received the minimum sentence permissible under the law for the crime on which he was tried and the jury recommended that half of that sentence be suspended. Certainly the appellant has not shown wherein he has been prejudiced.

As to appellant's second point, Ark. Stat. Ann. § 43-1501 (Repl. 1964), states as follows:

"Any criminal cause pending in any circuit court may be removed by the order of such court, or by the judge thereof in vacation, to the circuit court of another county, whenever it shall appear, in the manner hereinafter provided, that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein."

958

Ark. Stat. Ann. § 43-1502 (Repl. 1964), provides as follows:

"The application of the defendant for such order of removal shall be by petition setting forth the facts on account of which the removal is requested; and the truth of the allegations in such petition shall be supported by the affidavits of two (2) credible persons who are qualified electors, actual residents of the county and not related to the defendant in any way. Reasonable notice of the application shall be given to the attorney of the State. The court shall hear the application and, after considering the facts set forth in the petition and the affidavits accompanying it and any other affidavits or counter affidavits that may be filed and after hearing any witnesses produced by either party, shall either grant or refuse the petition according to the truth of the facts alleged in it and established by the evidence."

A motion for change of venue is addressed to the sound discretion of the trial court. *Bailey* v. *State,* 204 Ark. 376, 163 S. W. 2d 141. It has been uniformly held that unless the trial court has abused its discretion in overruling a motion for a change of venue, the order is conclusive on appeal. *Bryant* v. *State,* 95 Ark. 239, 129 S. W. 295; *Ford* v. *State,* 98 Ark. 139, 135 S. W. 821; *McElroy* v. *State,* 100 Ark. 301, 140 S. W. 8; *Spear* v. *State,* 130 Ark. 457, 198 S. W. 113; *Adams* v. *State,* 179 Ark. 1047. 20 S. W. 2d 130.

In *Maxwell* v. *State,* 236 Ark. 694, 370 S. W. 2d 113, we held that on a motion for a change of venue the burden is on the movant to make credible proof to support his motion and in *Bailey* v. *State,* supra, we said:

"This court has ruled that, in order for an affiant to qualify as a credible person under the statute, he must be cognizant of the prejudice existing throughout the whole county, and not merely in por-

tions thereof. *Hedden* v. *State,* 179 Ark. 1079, 20
S. W. 2d 119; *Dewein* v. *State,* 120 Ark. 302. 179
S. W. 346; *Speer* v. *State,* 130 Ark. 457, 198 S .W.
113; *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386;
*Mills* v. *State,* 68 Ark. 1005, 272 S. W. 671.''

The appellant relies on the Florida case of *Singer*
v. *State,* 109 So. 2d 7, and argues that ''in the exercise
of its discretion the trial court must give the defendant
the benefit of any doubt as to the state's ability to give
the defendant a fair and impartial trial.'' We have never
adopted such rule in Arkansas (*Bailey* v. *State, supra*).
But even so, in the *Singer* case the court points out that
prejudice in the minds of the members of the public was
brought out on voir dire examination of the jury after
the cout had ruled on the motion for change of venue.
In the case at bar none of the jurors knew anything
about the case and one of the jurors testified on voir
dire that he had never heard of the case. Certainly the
penalty assessed by the jury verdict was not indicative
of prejudice. The appellant obtained 14 form affidavits
in support of his motion for a change of venue, but only
four of the affiants appeared for examination by the
court at the hearing on the motion. One of the affiants,
Theo Baxter, Jr., testified that he had carried affidavits
over the county to be signed, but no one would sign them.
He testified that several people had told him that the
defendant could not obtain a fair trial because he had
already been tried twice. He could not remember the
names of anyone he talked to except his mother and
''one of the McMaster boys.''

> ''A.  I just asked him what he thought about the
> Stout trial.
>
> Q.  What did he say to that?
>
> A.  To my knowledge, I don't know his exact

words. He just left the impression that it would just have to go the way it was and he wasn't going to get involved in it.

\* \* \*

Q. You stated yourself that you didn't think he could get a fair trial?

A. Well, personally, I think when a man had been tried in Court twice and the case had been reversed, I don't think that the third time makes any difference."

Darrell Johnson had discussed the matter with no one outside Van Buren Township. Albert Smith testified that he had spent the previous night in Van Buren "up here in a shed"; that he knew nothing about the Bill Stout case and had talked to no one in Crawford County about the case. Mae Bostick testified that from what she had heard she is of the opinion that Stout could get a fair and impartial trial in Crawford County. We are of the opinion that the appellant fell far short of sufficient proof in support of his motion for change of venue, and that the trial court did not abuse its discretion in denying the motion.

The judgment is affirmed.