MILFORD FULLER AND LEO WALTON v.
STATE OF ARKANSAS

5-5410                                          439 S.W. 2d 801

Opinion Delivered April 21, 1969
[Rehearing denied May 19, 1969.]

*Donald J. Adams* (for appellant Walton) and *Moore & Brockman* for (appellant Fuller).

*Joe Purcell,* Atty. Gen.; *Don Langston,* Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice.     This appeal arises from the re-trial of *Walton and Fuller* v. *State,* 245 Ark. 84, 431 S.W. 2d 462, which was reversed by this court on September 9, 1968, and remanded to the Boone County Circuit Court for a new trial.

The facts set out in that case are the same as those in the case at bar and are reiterated briefly as follows: Law enforcement officers from Missouri, accompanied by local officers, made searches of certain premises in and near Harrison in Boone County, Arkansas, and seized numerous items of personal property which had been stolen in Missouri.    The principal items involved consisted of men's suits and television sets, and the items were seized under search warrants obtained in Boone County.    The warrants described the premises to be searched and specifically described the property searched for.    During the search of the premises, the appellant Walton directed the officers to his living quarters and pointed out to them a color television and a record player which were not designated objects of the search, but which were later determined to be stolen property and seized under voluntary relinquishment by Walton.

In the first trial all of the stolen property seized was admitted in evidence.    The appellants were found guilty by the jury and sentenced by the court to four years in the penitentiary.    On appeal, this court held that the warrants were defective under which the searches were conducted and that the trial court erred in admitting into evidence the objects seized thereunder.    The case

was reversed and remanded for a new trial. At the second trial, from whence comes this appeal, the appellants were again found guilty and sentenced on the jury verdict to ten years in the penitentiary. On this appeal from their second conviction, the appellants rely on the following points:

"1. The court erred in denying defendants' motions to suppress all evidence, statements, and other matters obtained as the result of illegal searches and seizures and their motions to suppress evidence under the doctrine of the 'fruit of the poisonous tree.'

2. The court erred in denying defendants' motion to suppress defendants' statements and in permitting testimony and evidence concerning the statements to be introduced into evidence.

3. The court erred in accepting the verdict of the jury and sentencing the defendants to a longer term in the Arkansas Department of Corrections than is permissible under law.

4. The court erred in admitting into evidence the Zenith television set and Zenith record player, the possession of which the defendants were charged and in failing to direct a verdict of acquittal of the appellant at the close of the evidence in the case."

Appellants' first and fourth points have already been decided adversely to their contention in *Walton and Fuller* v. *State, supra,* and our decision there becomes the law of this case as to the admissibility of evidence as to the television set and the record player which defendant "voluntarily" pointed out to the officers at the time of the second search. In that case we held this evidence to be admissible regardless of the fact that the voluntary disclosure was made at a time when the search was be-

ing conducted under the authority of the defective warrant. On this point we said:

> " ... Walton, in the presence of Fuller, voluntarily advised Sheriff Hickman of Boone County and Sgt. Rife that there was a quantity of other property besides the television sets for which the search was being conducted, and that he wanted to show them where it was. He told them that he had certain suits of clothing and the television set and record player upstairs in his living quarters ... *Under these circumstances, the property found in the Walton living quarters and his statements about them were not come about through exploitation of an illegal search* ...
>
> *For the reasons above set out, the television set and record player were admissible in evidence.*" (Emphasis supplied.)

Appellants' second point is likewise without merit for the same reason. In *Walton and Fuller v. State, supra,* this issue was resolved in the discussion of the evidence which was to be excluded as a result of the invalid search, wherein we said:

> " ... [I]dentification of property which was inadmissible should have been excluded by the trial court as 'fruit of the poisonous tree,' ... Furthermore, statements by both Walton and Fuller made in the prosecuting attorney's office, *except for those portions relating particularly to property not listed in the second search warrant about which Walton volunteered information,* were inadmissible as 'fruit of the poisonous tree.' "

Appellants argue that the statements made to the prosecuting attorney were inadmissible since appellants did not waive their constitutional rights under the holding of *Miranda v. Arizona,* 384 U.S. 448. This point

also was decided adversely to appellants' contention in *Walton and Fuller* v. *State, supra,* when we said:

"Although objection was made to the statements made in the prosecuting attorney's office as being inadmissible under the rule announced in *Miranda* v. *State of Arizona,* 384 U.S. 448, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), we find adequate evidence to support the trial judge's finding that the warnings required by that rule were given, and that the statements were voluntary and made under waiver of the rights enumerated in the above case. Neither Walton nor Fuller was in custody at that time on any charge. Before interrogation, both were advised of their rights as to the giving of statements. There is nothing to indicate that either was not intelligent enough to understand the statement of his rights. Nor does it appear that either was not conscious that he was waiving them in answering questions. Walton actually signed a written waiver, on which his constitutional privilege against self-incrimination and right to counsel are clearly and fully listed. There is no indication that this was not a free and voluntary act on his part. While Fuller did not sign the waiver, there is testimony that an identical statement of his rights was read to and by him before any interrogation, after which he expressed his willingness to answer questions. It was only after the interrogation was virtually concluded that he was asked to sign a written waiver of these rights, and he then stated that he wanted a lawyer 'if it got down to where he had to sign something.' In addition to the warnings at the time of the interrogation of Walton and Fuller in the prosecuting attorney's office, the evidence that both were advised of these rights at the time of the search is convincing."

As to their third point for reversal, appellants raise the issue of double jeopardy and argue that the trial

court erred in accepting the verdict of the jury sentencing the defendants to a longer term than they had received at the first trial of the case. Arkansas Statutes Annotated § 41-3938 (Repl. 1964) is as follows:

"Any person who shall possess stolen goods, money or chattels which exceed the aggregate value of thirty-five ($35.00), knowing them to be stolen, with intent to deprive the true owner thereof, shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one (1) year nor more than twenty-one (21) years; and if the aggregate value thereof be not more than thirty-five ($35.00) dollars, such person shall be guilty of a misdemeanor and shall be punished by imprisonment in the county prison or municipal or city jail not more than one [1] year and shall be fined not less than ten dollars ($10.00) nor more than three hundred dollars ($300.00)."

This issue of former jeopardy was discussed rather thoroughly in the very recent decision of this court rendered on April 1, 1969, in the case of *Stout* v. *State*, 246 Ark. 479, 438 S.W. 2d 698.

There was no "implied acquittal" of the appellants by the reversal of their first conviction in the case at bar and different degrees of the offense were not involved as was the situation in *Green* v. *United States*, 355 U.S. 184, cited in *Stout* v. *State*, *supra*. In the *Green* case the accused was first convicted of second degree murder and the court held that he could not be re-tried for first degree murder, having been impliedly acquitted of that *degree* of the crime. When an accused is tried on a specific degree of crime and is convicted of a lesser degree, which is included in the greater degree, he is thereby acquitted of the greater degree and cannot be tried again for the greater degree. This has been the law in Arkansas for nearly one hundred years. *Johnson* v. *State*, 29 Ark. 31. We now hold, as we have here-

to fore indicated, that the same rule applies where the difference in the *nature* of the punishment is the difference between life imprisonment and death. *Sneed* v. *State,* 159 Ark. 65, 255 S.W. 895. In the *Sneed* case the accused was first sentenced to life imprisonment and upon a new trial following reversal he was again sentenced to life imprisonment. Sneed was tried both times for the same degree of homicide, first degree murder, and this court approved an instruction at the second trial advising the jury that if Sneed was again found guilty of first degree murder, he could only be sentenced to life imprisonment and could not be sentenced to death. We perceive that this rule was based, not on the degree of the crime or the degree of punishment, but upon the difference in the *nature of the* punishment provided by statute for first degree murder, life imprisonment or death by electrocution.

In the case at bar the appellants were tried and convicted twice for the possession of stolen goods which exceeded the aggregate value of $35.00. Some of the items of stolen goods offered in evidence at the first trial were inadmissible and appellants were granted a new trial at their own request. At the second trial, before a new and different jury, only the admissible portion of the stolen goods was offered in evidence and this jury was not as lenient in fixing punishment as the trial court was in the first trial. The punishment fixed by the jury at the second trial was of the same nature as that fixed by the judge in the first trial and was well within the maximum fixed by statute. Had the appellants served time under the first sentence, they would have been entitled to credit on the second sentence for time served on the first, *Stout* v. *State, supra.*

The appellants rely on the case of *Patton* v. *State of North Carolina,* 381 F. 2d 636. The defendant in that case had served five years of a twenty year sentence imposed by the trial judge on a plea of nolo contendere. The conviction was overturned on constitutional grounds

under state post-conviction procedure, and at the second trial the defendant was sentenced by the trial judge to twenty-five years with credit allowed for the five years served and leaving twenty years yet to be served. The Fourth Circuit Court of Appeals held that the defendant had not waived the benefits of his initial sentence, "because of the restrictive effect this has on access to post-conviction remedies." The case at bar reaches us by direct appeal and not through post-conviction relief procedure, so we fail to see where the 14th Amendment to the constitution is involved in this case at all.

Juries in this state are closely examined on voir dire before they are accepted for service in a given case. While no one would deny that the jury system does not insure perfect justice in every case, no better system for doing so has yet been devised.

We think, the better rule to be, that where a defendant appeals from a conviction and is successful in obtaining a new trial, he must accept the hazards as well as the benefits of a new trial and assume the risk of a more severe sentence of the same nature at the hands of a new and different jury, when the second verdict is within the same degree and the punishment is within the statutory maximum fixed for the degree.

The appellants were not "put in jeopardy of life or limb" at all in this case under any reasonable interpretation of Amendment 5 of the constitution, nor have the appellants been deprived of "life, liberty, or property, without due process of law" under any reasonable interpretation of Amendment 14. We prefer to weigh appellants' rights by the plain and simple language of the constitution rather than attempting to measure the constitution by what we perceive appellants' rights should be. We are unwilling to say to the appellants "you are entitled to a new trial because some of the evidence at your first trial was inadmissible. If your second trial results in less punishment or acquittal, that is well and

good, and your constitutional rights to a speedy and public trial by an impartial jury under Amendment 6 to the constitution have been met and fully complied with. But if your second trial results in a greater penalty than the first even though the punishment is of the same nature and well within the statutory limitation for the offense charged, that part of your new trial violates your constitutional rights and will not be permitted to stand."

We are unable to derive such procedure from the constitution and we are unwilling to read such procedure into the constitution. We hold that under the law of Arkansas a new trial granted in a criminal case for error committed in the first trial constitutes a new trial as to penalty imposed by the verdict, as well as to guilt or innocence where the verdict in the second trial is for the same degree of crime as the first verdict, and the penalty assessed by the second verdict is of the same nature and within the statutory limitations for the degree of the crime involved.

The judgment of the trial court is affirmed.