James David SIMPSON, Jr. *v.* STATE of Arkansas

CR 81-8                                           623 S.W. 2d 200

Supreme Court of Arkansas
Opinion delivered November 2, 1981

*Charles L. Carpenter, Jr.* and *Thomas M. Carpenter,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. James David Simpson, Jr. was convicted of two counts of capital murder and one count of aggravated robbery. He was sentenced to two life sentences without parole for the murders and life imprisonment for the aggravated robbery.

The charges arose out of a shooting that occurred on March 4, 1979, at a trailer occupied by two brothers, Carl and Larry Gilmore. The jury found that Simpson killed Larry Gilmore and his brother, Grealing, and shot Carl Gilmore

and his girl friend, Cecilia Pigg, both of whom survived. The jury also found that Simpson robbed Larry Gilmore.

Simpson's appeal from these convictions raises several arguments most of which are without merit. The issue which causes us to reverse the conviction concerns the trial court's limitation of the cross-examination of Carl Gilmore, the State's chief witness.

The defense sought to cross-examine Carl Gilmore about why he suddenly fled the state before his scheduled trial on several felony charges. He was subsequently charged with fleeing and failure to appear. Gilmore suddenly appeared back in Arkansas just before Simpson's trial. He was not re-arrested by the State and all the charges were pending when he became the State's chief witness against Simpson.

Before cross-examination of Gilmore, an in-camera hearing was held to determine to what extent the defense could cross-examine Gilmore about his criminal record. The trial court's ruling regarding impeachment of Gilmore for criminal misconduct is not questioned on appeal. But, in addition to inquiring into Gilmore's criminal record, four times the defense attorney mentioned that he wanted to examine Gilmore on why he left the state and the circumstances of his return, which the defense contended would relate directly to Gilmore's interest and credibility. Counsel first mentioned this subject when the court queried counsel about the propriety of admitting evidence of offenses that were unrelated to truthfulness:

DEFENSE ATTORNEY:

. . .I think it's relevant for the jury to know that Mr. Gilmore fled the state. He says because he was afraid for his life. But it's interesting he didn't flee the state till shortly before he was going to have to plead guilty to five offenses and take a five year sentence. I think the jury is entitled to know that.

Later counsel elaborated on its theory by stating:

DEFENSE ATTORNEY:

Your Honor, I think it's curious that Mr. Gilmore was supposed to be a witness for the State and this trial was initially set in September. That Mr. Gilmore was due to plead guilty to these offenses on a five year sentence. And while he says he was afraid for his life I think he was, also, aware that his testimony was essential to the State's case and he stayed gone during that period of time. He shows up at the last minute and somehow he manages not to have to go through with his plea or with his trial. I think that had the normal courses of events had occurred as they would have Mr. Gilmore would have been convicted of these offenses by now and of course this type of evidence would have been proper.

Considerable argument resulted between counsel over the extent of the cross-examination. At first the trial court indicated that Gilmore could be questioned about his flight and return; the State strongly resisted the defense's efforts and the court finally concluded that that was not a proper area of inquiry. However, that was not the end of the matter. After the parties had presented their evidence, the defense was allowed to offer proof as to what it would have shown had it been allowed to cross-examine Gilmore about his fleeing. In this regard the court made the statement:

. . . During the time that [Gilmore] was under cross-examination the defense counsel wanted to ask him certain questions on cross-examination and I refused to let him do that. And the questions as I understand it were to go to his credibility.

At the proffer the court was informed of several felony charges Gilmore had pending against him when he left the state. Gilmore was questioned and testified that he left Arkansas for California because he feared for his life. He said he contacted the prosecuting attorney's office, but did not tell them where he was going. He said that he had talked to a deputy prosecuting attorney and a Chief Terry of the sheriff's office. His story of whom he talked with and why he

left did not fit with what the State had related at a previous hearing during the course of the trial.

After the trial the defense filed a motion for a new trial. At the hearing on the motion it was confirmed that Gilmore was not arrested for fleeing the state or failing to appear on charges of robbery, forgery and several other charges.

Also, at the hearing on the motion for a new trial, Gilmore's attorney was called as a witness and he testified that Gilmore had been offered a five or six year sentence on his pending charges but that Gilmore felt that since he was going to have to testify for the State against Simpson, he should not serve any time. It was after that that Gilmore left the state. And, as it turns out, he was not sentenced to serve any time. After the trial Gilmore apparently received a suspended sentence on the recommendation of the prosecuting attorney.

The defense made it clear that it wanted to cross-examine Gilmore about his interest in testifying against Simpson. The defense sought to inquire about why he left the state and why, although he was charged with fleeing and failure to appear, when he returned no action was taken on those charges; instead, he appeared as the State's chief witness. In other words, the defense wanted to ask what deal, if any, had been made for his testimony against Simpson. That subject would go to Gilmore's bias and credibility as a witness.

We have consistently taken the view that wide latitude should be given during cross-examination, especially when bias is concerned. In *Klimas* v. *State*, 259 Ark. 301, 534 S.W. 2d 202 (1976) we said:

> ... It is generally permissible for a defendant to show by cross-examination anything bearing on the possible bias of the testimony of a material witness. *Bethel* v. *State*, 162 Ark. 76, 257 S.W. 740; *Ringer* v. *State*, 74 Ark. 262, 85 S.W. 410; Annot. 62 ALR 2d 611 (1958). This rule applies to testimony given under expectation or hope of immunity or leniency or under the coercive

effect of his detention by authorities. *Stone* v. *State, supra; Boyd* v. *State, supra.* See also *Campbell* v. *State,* 169 Ark. 286, 273 S.W. 1035; *Alford* v. *U.S., supra.* The test is the expectation of the witness and not the actuality of a promise. *State* v. *Little, supra; Spaeth* v. *United States,* 232 F. 2d 776, 62 ALR 2d 606 (6 Cir., 1956).

The right of a defendant to show the bias of a witness does not lie within the court's discretion. *Wright* v. *State,* 133 Ark. 16, 201 S.W. 1107. . . .

Denial of cross-examination to show the possible bias or prejudice of a witness may constitute constitutional error of the first magnitude as violating the Sixth Amendment right of confrontation. *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

We conclude that the trial court erred in failing to allow the defense to pursue the issue and the error can only be corrected by a new trial. It may be the court did not precisely understand the appellant's posture in this regard, but the record reflects the request was clearly made several times.

There are several other alleged errors which we must discuss. The defense argues that it was improper to charge Simpson with capital felony murder with aggravated robbery as the underlying felony when the statute only lists robbery as one of seven felonies that can support such a charge. See Ark. Stat. Ann. § 41-1501 (1) (a) (Repl. 1977). The defense argues that Simpson should have been charged with first degree murder which can be supported by any felony. Ark. Stat. Ann. § 41-1502. The General Assembly could not conceivably have intended that robbery, which may involve no force, would support a charge of capital murder, while aggravated robbery, an inherently dangerous crime, would not.

Simpson contends that the first degree murder statute and capital murder charge are unconstitutionally vague because they overlap in such a way that an accused may be charged with either for precisely the same conduct. That

argument has been raised before and we have decided that there is no constitutional infirmity in the statute. *Earl* v. *State*, 272 Ark. 5, 612 S.W. 2d 98 (1981); *Cromwell* v. *State*, 269 Ark. 104, 598 S.W. 2d 733 (1980).

Simpson also argues that the court was wrong in not inserting in its instructions on the lesser offense of first degree murder the specific underlying felonies of either aggravated robbery or simple robbery. Instead the trial judge inserted the words "a felony."

When we adopted the Arkansas Model Criminal Instructions we said in a per curiam opinion that any variation from them must be explained in writing by the trial judge. 264 Ark. 967 (1978). AMCI 1502 (a) provides that the court should insert the "applicable felony" that supports the charge of first degree murder. The trial judge should have done so.

The defense contends that the court should have instructed the jury on the elements of aggravated robbery and robbery in conjunction with its instructions on first degree murder. The court had already instructed the jury on the elements of those crimes when it gave the charge of capital murder. It may have been the better practice to instruct again on the elements of those charges as suggested by the defense, but the court's failure to do so did not amount to prejudicial error.

The old issue of "death qualified" juries is raised, no doubt for posterity's sake. We have repeatedly ruled that such a jury is not unconstitutional. *Ruiz* v. *State*, 273 Ark. 94, 617 S.W. 2d 6 (1981); *Miller* v. *State*, 269 Ark. 341, 605 S.W. 2d 430 (1980). The argument is slightly different in that the defense says it was denied an opportunity to put on evidence of the fact that such a jury is prone to find a defendant guilty. Evidently the trial court did not take the request seriously, nor do we. There was no genuine offer of proof.

The sentence imposed was improper according to *Swaite* v. *State*, 272 Ark. 128, 612 S.W. 2d 307 (1981), and in

this case Simpson cannot be convicted for both capital murder and aggravated robbery.

Reversed and remanded.

ADKISSON, C.J., and HAYS, J., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. The majority have held that the trial court committed prejudicial error by failing to let the defense cross-examine a witness, Gilmore, about his leaving town before his scheduled trial on five criminal charges. They conclude that "the defense wanted to ask what deal, if any, had been made for his testimony against Simpson," thereby proving Gilmore was biased. The record in no way substantiates this conclusion reached by the majority.

Rather, the record reflects that what we have here is an objection by the defense to its not being allowed to cross-examine the witness as to specific acts of felonious misconduct under Rule 608, Uniform Rules of Evidence, § 28-1001 Ark. Stat. Ann., Vol. 3A (Repl. 1979). One of the acts of misconduct with which the defense sought to impeach Gilmore was the charge of Felony Failure to Appear resulting from his leaving town before his scheduled trial.

At the beginning of the hearing on this issue the trial court stated that the hearing was on defense counsel's motion "to inquire of Carl Gilmore as to whether or not he is guilty of having committed certain criminal offenses." The entire proceeding and conversation centered on this issue. The trial court ruled on the issue at page 805 of the record by stating:

> You can attack his general credibility as a witness by showing evidence of previous convictions under Rule 609. Now, that's questionable. But, under 608 (b) in order to go into specific instances of conduct you must show specific instances of conduct which would be the type of conduct to go to the truthfulness or untruthfulness. The mere fact that somebody may have been guilty of a drug offense or of an assault and battery

or even of a murder does not go to the question of truthfulness or untruthfulness.

Later, the court further stated in regard to this issue:

. . . During the time that [Gilmore] was under cross-examination the defense counsel wanted to ask him certain questions on cross-examination and I refused to let him do that. And the questions as I understand it were to go to his credibility.

After the jury had returned a verdict of guilty but before it fixed the punishment, the defense apparently asked that the record be kept open for purposes of making a proffer of proof regarding this issue. In the hearing that followed there was no indication that the ground for objection was other than was originally presented.

The issue of bias was not raised. It is obvious from reading the record in this case that the trial judge could not have understood that appellant sought to prove bias by cross-examining Gilmore about leaving the state. Appellant never mentioned bias in the trial court, but if so, this fact should be set out in the majority opinion. We do not have a plain error rule in this state except for certain limited exceptions not applicable here. *Wicks* v. *State,* 270 Ark. 781, 606 S.W. 2d 366 (1980); *Singleton* v. *State,* 274 Ark. 126, 623 S.W. 2d 180 (1981).

An objection is not sufficient unless it specifically states the grounds relied on so that the ruling may be made understandingly and the objection obviated if possible. General conversation which merely mentions the word "credibility" as the basis for an objection is not sufficient. This Court has consistently held that in order to preserve an objection for review on appeal it is necessary that the objection at trial be sufficiently specific to apprise the trial court of its basis. *Wicks, supra; Turkey Express* v. *Skelton Motor Co.,* 246 Ark. 739, 439 S.W. 2d 923 (1969); *Goodwin* v. *State,* 263 Ark. 856, 568 S.W. 2d 3 (1978); Cf. Rules 46 and 51 Ark. Rules Civ. Proc., Vol. 3A (Repl. 1979); Rule 13,

Uniform Rules for Cir. & Chan. Courts, Ark. Stat. Ann., Vol. 3A (Supp. 1981).

I am hereby authorized to state that HAYS, J., joins me in this dissent.